Warren R. BITTNER, et al., Plaintiffs,

v.

SECRETARY OF DEFENSE, et al., Defendants.

Civ. A. No. 84–1730.

United States District Court, District of Columbia.

June 13, 1985.

---

Michael J. McDanold, Sidley & Austin and Donald M. Squires, Washington, D.C. (Elizabeth Symonds and Arthur B. Spitzer, ACLU Fund of the Nat. Capital Area, Washington, D.C., of counsel), for plaintiffs.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendants' motion to dismiss this action, plaintiffs' opposition thereto, defendants' reply to plaintiffs' opposition, supplemental briefing, oral argument on the motion, and the entire record herein. For the reasons set forth below in detail, the Court denies defendants' motion, but dismisses some of the named plaintiffs.

On June 5, 1984, eight former servicemembers of the United States Army, Navy, and Air Force brought suit against the Secretary of Defense and the Secretaries of the United States Navy, Army, and Air Force. Also named in the original complaint were organizations, namely, the Vietnam Veterans of America ("VVA"), and the National Gay Task Force ("NGTF"). By means of an amended complaint filed on August 3, 1984, an additional plaintiff, Warren R. Bittner, was included in the action.

Plaintiffs in this case seek declaratory and injunctive relief for the allegedly illegal and unconstitutional practices and policies with regard to the creation, maintenance, and public disclosure of records reflecting less than honorable discharge of military service. The individually named plaintiffs in this action challenge the less-than-honorable-discharge characterization issued administratively for alleged homosexual acts, homosexual tendencies, or homosexuality regardless of whether such acts or status as a homosexual had an

impact on the servicemembers' performance of military duties. Eight of the individual plaintiffs not only challenge the character of the discharge itself, but also challenge the administrative decisions of the Discharge Review Boards ("DRB") and the Boards for Correction of Military Records ("BCMR") as unlawful within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). Plaintiff Bittner's claim is limited to challenging the characterization of his discharge. The two organizational plaintiffs seek declaratory and injunctive relief to strike down defendants' current discharge characterization policy because it allegedly is violative of the law and the Constitution.

Defendants seek to dismiss this action on three grounds: lack of standing for the organizational plaintiffs, failure to exhaust administrative remedies for plaintiff Bittner, and statute of limitations for the remaining eight individual plaintiffs.

Upon review of each argument, the Court concludes that plaintiff VVA must be dismissed for lack of standing; that plaintiff Bittner must be dismissed, without prejudice, for failure to exhaust available administrative remedies; and that the remaining eight individual plaintiffs are not barred by the statute of limitations from bringing this action to seek review of the administrative review boards' decisions, but are barred from seeking review of their original discharge. Some of these eight plaintiffs, however, are dismissed, without prejudice, for failure to exhaust their administrative remedies. Accordingly, only two individual plaintiffs remain to pursue review of the administrative determination, and the NGTF may remain to pursue claims against defendants' challenged policies and practices. The Court shall review each type of plaintiff sought to be dismissed by defendants.

### Organizational Plaintiffs

Plaintiffs VVA and NGTF assert that the military policy regulating the character of discharges issued to homosexuals has caused them "injury in fact" and, therefore, gives standing to these plaintiffs.

### A. Vietnam Veterans of America

"[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). In their complaint plaintiffs assert for the VVA that

> [b]ecause of defendants' practices and policies challenged herein, VVA has had and will have to expend considerable financial resources to provide legal representation and legal advice on applications for recharacterization of discharge filed before the Discharge Review Boards and Boards for Correction of Military Records by veterans discharged for homosexual acts, homosexuality, or "homosexual tendencies." This diversion of financial resources has hindered VVA in accomplishing its organizational goals by assisting veterans on other issues related to their military service.

Complaint at ¶ 11.

In the admittedly broad but unanimous decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Supreme Court outlined the requirements necessary for an organization to attain standing. In that decision certain individuals and an organization sought to challenge a realty company's alleged practice of "racial steering." The organizational plaintiff was " 'a nonprofit corporation . . .' whose purpose was 'to make equal opportunity in housing a reality in the Richmond Metropolitan Area.' . . . Its activities included the operation of a housing counseling service, and the investigation and referral of complaints concerning housing discrimination." *Id.* at 368, 102 S.Ct. at 1118–19. Quoting the complaint, the Court outlined what the organizational plaintiff alleged:

> "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to hous-

ing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [*sic*] racially discriminatory steering practices."
App. 17, ¶ 16.

*Id.* at 379, 102 S.Ct. at 1124. The Court then concluded that

> [i]f, as broadly alleged, petitioners' steering practices have perceptively impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests. . . .

*Id.*

Courts that have applied the *Havens Realty* standard have stressed the two-fold nature of organizational standing. The court in *Minority Employees v. Tennessee,* 573 F.Supp. 1346 (M.D.Tenn.1983), for example, noted that

> [w]hen an organization alleges that it has been *hindered* by a defendant in its efforts to assist others to obtain constitutional or statutory rights *and* that it has had to *devote significant resources* to counteract a defendant's actions, it has alleged a sufficient injury to itself to establish standing.

*Id.* at 1349 (emphasis added). *See also Davis v. Mansards,* 597 F.Supp. 334, 343 (N.D.Ind.1984).

■ Although plaintiff VVA is able to allege that it has incurred a drain on its organizational resources, no allegation is made that it has been hindered in effecting its organizational goals. Actual interference with the implementation of the VVA's programs must also be claimed before sufficient injury is present for standing purposes. A mere depletion of resources in asserting claims of allegedly illegal activity is not sufficient to confer standing. Accordingly, the Court finds that plaintiff

VVA does not have standing to pursue this action and must therefore be dismissed.

**B.** *National Gay Task Force*

The NGTF asserts in its complaint that it is

> a nonprofit organization created for the purpose of advancing the rights and protecting the interests of individuals who are gay or lesbian. There are over 10,-000 members of NGTF, most of whom are homosexual. Members of NGTF are currently members of the U.S. Army, Navy, Marine Corps or Air Force and are, unbeknownst to their commanding officers, gay or lesbian. These members of NGTF are subject to the policy of the military departments to separate homosexual personnel and the policy to issue such personnel less than honorable discharges in circumstances in which their homosexuality has not affected performance of military duties. This policy currently harms these NGTF members psychologically and emotionally because they are aware that a less than honorable discharge, by characterizing the member's entire period of service, severely stigmatizes an individual, causing loss of self-esteem and loss of reputation, and making it very difficult to obtain employment in civilian society.

Complaint at ¶ 12.

In determining whether the NGTF has standing, the Court looks to the reasoning as set forth in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In *Warth,* the Supreme Court stated that:

> The association must allege that its members, or any one of them, are suffering immediate or *threatened* injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensible to proper resolution of the cause, the association may be an appropriate representative of its

members, entitled to invoke the court's jurisdiction.

*Id.* at 511, 95 S.Ct. at 2211 (emphasis added). What plaintiff NGTF has alleged in this action is that its homosexual members presently in the military are threatened with a less than honorable discharge as a direct result of defendants' policy and practice.

Defendants, in seeking to dismiss this plaintiff, argue that this threatened injury is too speculative and, therefore, not sufficient to establish standing to challenge defendant's policies and practices. Defendants argue that the injury is speculative because NGTF members have not yet been found by their commanding officers to be homosexual, have not yet been discharged, and have not yet been issued a less than fully honorable discharge.

■ The Court, however, disagrees with defendants' "speculative" argument. Surely, it is beyond speculation that NGTF members, if known by their commanding officers to be homosexual, would be discharged. *See* 32 C.F.R. Part 41, Appendix A, Part 1, Section H 1 (1984) ("Homosexuality is incompatible with military service."); *Dronenburg v. Zech,* 741 F.2d 1388 (D.C.Cir.1984). Additionally, it is more than likely that the challenged policy increases the risk that homosexual NGTF members will receive less than fully honorable discharges. The Court finds that this increased risk is sufficient to confer standing for the NGTF. *See, e.g., Committee for G.I. Rights v. Callaway,* 518 F.2d 466, 471–72 (D.C.Cir.1975).

### Individual Plaintiffs

#### A. Warren R. Bittner

On April 23, 1984, administrative discharge proceedings were initiated by the Air Force against plaintiff Bittner on the grounds that he admitted being homosexual. On May 2, 1984, plaintiff Bittner resigned from the Air Force rather than go through the administrative discharge proceedings. The Air Force accepted his resignation and on July 16, 1984, plaintiff Bittner was issued a general discharge. Plaintiff Bittner never applied to either the Air Force DRB or the Air Force BCMR for an upgrade in the character of his discharge.

It is beyond dispute that this Circuit has a strong preference for presuit exhaustion of intramilitary administrative remedies. *Knehans v. Alexander,* 566 F.2d 312 (D.C. Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *accord, Hardison v. Alexander,* 655 F.2d 1281, 1285 (D.C.Cir.1981). Although application to the DRB's and the BCMR's is not required in order to perfect a right to sue, this Circuit has concluded that "an aggrieved military officer must first exhaust his administrative remedies before his particular service's Board of Correction of Military Records prior to litigating claims in Federal court." *Knehans v. Alexander,* 566 F.2d at 315.

As Judge Gesell has held, in remanding a challenge to an administrative discharge:

> The regulatory standards for determining when separation is justified and what type of discharge is warranted are broad and undoubtedly informed by military practices and interpretations of which the Court is unfamiliar. Resolution of plaintiff's substantive claims, involving ... matters of personnel management is, in the first instance for the military.... Precedent dictates that the case be remanded to the Secretary of the Army for the entry of findings upon which the Court can base its review.

*Martin v. Secretary of Army,* 455 F.Supp. 634, 639 (D.D.C.1977).

■ In this case, plaintiff Bittner should first pursue his claims before the Air Force DRB. *See* 10 U.S.C. § 1553. The DRB, in reviewing plaintiff Bittner's discharge, is permitted to exercise its discretion on issues of equity by reviewing the individual merits of his claim. *See* 32 C.F.R. § 865.-120 (1984). If he were unsuccessful before the Air Force DRB, plaintiff Bittner could renew his application before the Air Force BCMR. 10 U.S.C. § 1552; *see also* 32

C.F.R. § 865.1–19 (1984). Even if plaintiff Bittner were unsuccessful before the Personnel Review Boards, these boards would provide for the Court a complete factual record, as well as give expert consideration to plaintiff Bittner's claims.

In opposition to defendants' claim that plaintiff Bittner must first pursue available administrative remedies, plaintiffs claim, *inter alia,* that these review boards lack the authority to examine constitutional claims, that the review process is too long and time-consuming, and that prior board action with respect to other individual plaintiffs suggests that plaintiff Bittner will also be unsuccessful with his claims.

The Court is not persuaded by plaintiffs' arguments. The Court should not address constitutional claims where issues may be resolved in plaintiff's favor at the administrative level on nonconstitutional grounds. Further, as demonstrated by other individual plaintiffs in this action, the administrative review process is not inordinately long. Additionally, it provides the Court with valuable agency expertise and fact finding that could assist the Court in reviewing plaintiff Bittner's claims. Finally, prior board actions of other plaintiffs in this action are not determinative as to plaintiff Bittner's claims. The review boards must determine individually the factual basis and propriety of plaintiff Bittner's general discharge. The Court notes that beyond any information assistance these review boards may render in reviewing plaintiff Bittner's claims, pursuing administrative remedies within the Air Force affords the defendants the opportunity "to discover and correct its own errors," if any. *Eastmead v. Marsh,* 729 F.2d 863, Mem. at 2 (D.C.Cir. 1984). Accordingly, the Court determines that plaintiff Bittner must pursue his administrative remedies with the Personnel Review Boards before pursuing these claims in court and, therefore, his claims are dismissed without prejudice.

**B. *Eight Remaining Individual Plaintiffs***

Defendants seek to dismiss the claims of the eight remaining individual plaintiffs in this action on statute of limitations grounds. These plaintiffs, Harry R. Lorenz, Lilli M. Vincenz, John J. Howard, Albert Thomas DiManno, John Lawrence Mario, John Doe, Jane Roe, and John Wade, each challenge the characteristics of their discharges, as well as the administrative appellate review of their discharges. These individual plaintiffs were discharged more than six years before this action was commenced. The challenged administrative determinations, however, all occurred less than six years prior to the time of suit.

In seeking to dismiss the eight individual plaintiffs on statute of limitations grounds, defendants argue that these plaintiffs' claims are all barred by the six-year statute of limitations as set forth in section 2401 of Title 28, United States Code.[1] Defendants aver that because plaintiffs are pursuing claims which essentially accrued on the date of their discharge and each of these eight plaintiffs was discharged more than six years before the suit was filed, section 2401 bars these eight plaintiffs from attaining relief in Federal court.

As support for this contention, plaintiffs look to the United States Court of Appeals for the District of Columbia Circuit's ruling in *Walters v. Secretary of Defense,* 725 F.2d 107 (D.C.Cir.1983). In that decision the court ruled that "the six-year statute of limitations of section 2401(a) bars [a] civil action for declaratory and injunctive relief brought seven and one-half years after the former servicemember's discharge." *Id.* at 108. The *Walters* case involved a Marine who was given a general discharge from the service, following an administrative determination of drug abuse. Instead of availing himself of administrative remedies, suit was filed in district court. The district court granted plaintiff's motion for

---

1. Title 28, United States Code, section 2401 provides that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

summary judgment. On appeal, the Court of Appeals reversed the district court's determination. It concluded that the appellant's "cause of action first accrued at the time when he began to suffer an alleged disadvantage—when he received his less-than-honorable discharge in 1973." *Id.* at 114. Because more than six years had elapsed between that appellant's discharge and his filing suit, the court concluded that the statute of limitations barred him from challenging the discharge in court.

Plaintiffs appear not to contest this analysis of *Walters* and agree that the eight individual plaintiffs' challenges of their discharges are barred by the statute of limitations. They argue, however, that this action seeks not only to challenge the initial discharge, but also the administrative review by the DRB and the BCMR. Plaintiffs note that the Court of Appeals left open the question of whether a court may review administrative decisions from review boards of discharges that occurred more than six years after an individual's discharge. *See id.* at 115. Although defendants argue that *Walters* clearly implies that the limitation period of six years must have some meaning and must, therefore, prevent any court review of challenges to a discharge or the administrative review of the discharge, the question remains open. As noted by Judges Wald and Mikva in their concurrence in the denial of the motion for rehearing *en banc* in *Walters:*

> We want to emphasize the limited reach of the holding in this case. As we read *Walters*, the panel opinion, 725 F.2d 107 (D.C.Cir.1983), merely holds that, in *independent civil actions* brought to correct a serviceman's record, the six-year statute of limitations found in 28 U.S.C. § 2401(a) applies. *Walters* explicitly does not speak to the altogether distinct question of what time period governs when *review* is sought of administrative discharge decisions. *See* [725 F.2d] at 115. ("Nor do we address the *reviewability* of such an administrative decision in federal court.") (emphasis added). Congress has granted discharged service members 15 years from discharge to pe-

tition a review board for an upgrade, 10 U.S.C. § 1553(a), and this court has expressly held that Congress did not intend to preclude judicial review of decisions reached by those review boards. *Van Bourg v. Nitze*, 388 F.2d 557, 564 n. 14 (D.C.Cir.1967). As a result, we do not believe *Walters* in any way limits jurisdiction to *review* a correction board's treatment of a petition for a discharge upgrade that is timely filed, under 10 U.S.C. § 1553(a), with the relevant administrative body.

*Walters v. Secretary of Defense*, 737 F.2d 1038 (D.C.Cir.1984 (emphasis in original).

◼ The majority of courts that have addressed the question of whether individuals may attack review board decisions in Federal court, despite the fact that the original discharge took place more than six years before suit was filed, have concluded that there is no bar. *See Weber v. Weinberger*, No. K 83–664, (W.D.Mich. Nov. 13, 1984); *Schmidt v. United States*, No. C–83–3834 JPV, slip op. at 4–5 (N.D.Cal. Apr. 25, 1984); *White v. Secretary of Army*, 629 F.Supp. 64, 67–69 (D.D.C. 1984); *Miskill v. Lehman*, 566 F. Supp. 1486, 1489 (D.D.C.1983); *but see Geyen v. Marsh*, 587 F.Supp. 539 (W.D.La. 1984), *appeal pending*, 775 F.2d 1303 (5th Cir.). If a plaintiff has alleged that when he sought administrative relief for a discharge upgrade and that such relief was arbitrarily and capriciously denied, then there is a strong presumption that this former service member may pursue his claims pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, before a district court. It is undisputed that judicial review of agency action by an aggrieved individual will not be cut off unless there is persuasive proof that Congress intended that result. *See Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Further, as this Circuit has stated in *Van*

*Bourg v. Nitze*, 388 F.2d 557 (D.C.Cir. 1967),

> [t]he function of the [Discharge] Review Board and the Correction Board is to review the type and nature of discharges in order to correct errors or remove injustices. And it is the duty of the judiciary to inquire into an allegedly wrongful and detrimental refusal to grant deserved relief.

*Id.* at 563 (footnote omitted). For this reason, the Court concludes that plaintiffs' challenge of the administrative decisions denying an upgrade in discharge is reviewable in this action despite the fact that the actual discharges occurred more than six years before the action was filed.

The Court must emphasize the fact, however, that it does not and cannot review the actual discharges of these plaintiffs, but only the review boards' decisions denying a request for upgrade. Defendants argue that applying the six-year limitations period from the date of a review board's denial of upgrade discharge would render the statute of limitations period meaningless because these boards' decisions are actually a reconsideration of the decisions made at discharge to characterize it as less than honorable. This claim, however, is not necessarily true. For example, the DRB's are required to review a discharge based on current policies and procedures and not those which were in effect at the time of discharge. *E.g.*, 32 C.F.R. 70.9(c)(1) (1984). In examining the review boards' decisions a court determines whether these review boards properly applied current law and current policies and procedures. This examination can only be described as distinct from reviewing the original discharge qualification itself.

Accordingly, these eight plaintiffs are not barred from seeking review of denied applications for an upgrade in discharge.

■ The Court, notes, however, that all but two of these eight individual plaintiffs

have failed to pursue all available administrative remedies. With the exception of plaintiffs Vincenz and Doe, the individual plaintiffs have failed to pursue their claims with the various military branches' BCMR. As Judge Corcoran explained in *White v. Secretary of the Army*, No. 83–2554,

> the statute of limitations of section 2401(a) does not begin to run until plaintiff's right of action has accrued. "In the agency context, the logical inference is that the cause of action accrues when all statutorily required or permitted agency review has been exhausted." *Impro Products, Inc. v. Block*, 722 F.2d 845, 850.

Slip op. at 10. Accordingly, if these plaintiffs wish to seek review of the administrative denials of requests for upgrade in discharge, they must first pursue the administrative avenues available to them.[2] Plaintiffs Lorenz, Howard, DiManno, Mario, Roe, and Wade are therefore dismissed without prejudice for failure to exhaust available administrative remedies.

*Plaintiffs' Class Certification Motion*

At the hearing on defendants' motion to dismiss, the Court stated that it would deny plaintiffs' motion for class certification "at this time." The Court reasoned that because it believed that the class certification motion was filed untimely, it had to be denied. Upon review of the parties' papers, the Court believes that it should have the benefit of further briefing on the issue of class certification before it rules on the motion. Accordingly, plaintiffs' motion for class certification is not denied, and further briefing shall continue on this motion before a determination is made.

---

**2.** Pursuant to defendants' regulations, applications for correction of records must be made within three years of the alleged error or injustice. 32 C.F.R. § 581.3(c)(2) (1984); 32 C.F.R. § 723.3(b) (1984); 32 C.F.R. § 865.4 (1984). Further, failure to file within that period may be excused by the BCMR, if it finds that it will be in the interests of justice to do so. *Id.* Because the three-year window had not passed at the time of filing suit, these administrative avenues are still open to these six individual plaintiffs.