GAY VETERANS ASSOCIATION, INC.,
et al., Plaintiffs,

v.

SECRETARY OF DEFENSE, et
al., Defendants.

Civ. A. No. 85–3193.

United States District Court,
District of Columbia.

July 29, 1987.

Michael J. McDanold, Reynolds, Allen &
Cook, and Barton F. Stichman, Donald
Squires, Vietnam Veterans of America Le-
gal Services, Washington, D.C., for plain-
tiffs.

Vincent M. Garvey, James A. Gardner,
Civ. Div., Dept. of Justice, Washington,
D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge.

Plaintiffs bring this action on their own behalf and on behalf of similarly situated current and former members of the United States Armed Forces to challenge defendants' policies and practices with regard to the creation, maintenance, and public disclosure of records reflecting that the military service of plaintiffs was less than honorable. Specifically, plaintiffs challenge the scope of defendants' authority to issue any less-than-honorable characterization of the quality of military service with respect to discharge for homosexuality or homosexual conduct. Plaintiffs note emphatically that they do not here challenge the right of the military departments to separate personnel for homosexuality. *Cf. Dronenburg v. Zech,* 741 F.2d 1388, 1397 (D.C. Cir.), *reh'g en banc denied,* 746 F.2d 1579 (1984).

The parties have filed cross-motions for summary judgment. There being no dispute as to the material facts of this case, the Court will grant judgment in defendants' favor, on every count except as to plaintiff Doe's third claim. The Court earlier denied without prejudice plaintiffs' motion for class certification. *Gay Veterans Association, Inc. v. Secretary of Defense,* No. 85–3193, slip op. at 2–3 (D.D.C. Mar. 25, 1987) [Available on WESTLAW, DCT database]. The Court will not disturb that determination.

### I. *Factual Background*

#### A. *The Discharge Scheme*

Department of Defense regulations codified at 32 C.F.R. Part 41 govern the standards and procedures by which personnel are administratively discharged from military service and by which the quality of their service is characterized. These regulations require that upon separation from the military, all personnel shall be issued a discharge certificate that grades the quality of service on one of three levels: Honorable, General (or Under Honorable Conditions), and Undesirable (or Under Other Than Honorable Conditions).

Two additional types of discharge certificates are the Bad Conduct Discharge ("BCD") and the Dishonorable Discharge ("DD"). These discharge certificates are authorized by the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801 *et seq.,* and can only be imposed by sentence of a general or special court-martial.

#### B. *Plaintiffs*

Each of the named individual plaintiffs served on active duty as a member of the United States Armed Forces, and upon separation from military duty, each was issued a less than honorable discharge. These plaintiffs allege that the sole basis for this characterization of military service is defendants' conclusion that these veterans had homosexual tendencies, engaged in homosexual conduct, or were homosexual at some point during their military service. Each individually named plaintiff applied subsequently to either a Discharge Review Board ("DRB") or a Board for Correction of Military Records ("BCMR") for an upgrade in the characterization of their discharge to Honorable, and each was denied such relief.

Plaintiff Walter Clark was separated from the Air Force in 1957 for homosexuality, and issued an Undesirable Discharge. Complaint, ¶ 24. During his period of service, Mr. Clark received low efficiency ratings and a summary court-martial conviction for driving while intoxicated. Plaintiffs' Exhibit 13, Record of Proceedings at 3. Mr. Clark applied voluntarily for a discharge in lieu of a hearing with the understanding that if his application for discharge were approved, he might be discharged under other-than-honorable conditions. *Id.*

On August 15, 1979, Mr. Clark applied to the Air Force DRB for recharacterization of his discharge to Honorable. On February 5, 1980, the DRB, following the discharge standards then in effect, denied the application. Plaintiffs' Exhibit 13. In December 1980, Mr. Clark applied to the Air Force BCMR for further review of his discharge. In February 1981, the BCMR upgraded Mr. Clark's discharge to General,

denying his request for a full upgrade to Honorable. The BCMR applied the discharge characterization standards then in effect but made no finding that Mr. Clark's alleged homosexuality affected his performance of military duties. Plaintiffs' Statement of Material Facts Not in Dispute ("Plaintiffs' Statement"), ¶ 12.

Plaintiff Janet Black was separated from the Air Force for homosexuality in 1953, and issued an Undesirable Discharge. Complaint, ¶ 27. During her period of service, Ms. Black received three summary court-martial convictions and performed poorly in technical school. Plaintiffs' Exhibit 14, Air Force DRB Decisional Rationale, Findings. Ms. Black agreed to accept an Undesirable Discharge for the good of the service in lieu of further adverse action. *Id.*

In 1981, Ms. Black petitioned the Air Force DRB for recharacterization of her discharge to Honorable. This request was denied in 1982, whereupon Ms. Black applied to the BCMR for the same relief. The BCMR applied the discharge characterization then in effect and denied Ms. Black's application in October 1984. The BCMR made no finding that Ms. Black's homosexual conduct affected her performance of military duties. Plaintiffs' Statement, ¶ 14.

Plaintiff Lilli M. Vincenz was separated from the Army in 1963, and received a General Discharge. Complaint, ¶ 30. During her period of service, Ms. Vincenz engaged in homosexual liaisons with other service members, including one encounter on post during which she was observed by her roommate. Plaintiffs' Exhibit 15, Statement of Private Patricia J. Clancy; *id.*, Statement of Ms. Vincenz. Ms. Vincenz waived any hearing before a board of officers and accepted her discharge. *Id.*

In 1981, Ms. Vincenz applied to the Army BCMR for recharacterization of her discharge to Honorable. The BCMR applied the discharge characterization standards then in effect and denied Ms. Vincenz's application in August 1982. Plaintiffs' Exhibit 15. The BCMR made no finding that Ms. Vincenz's homosexual conduct affected adversely her performance of military duties. *Id.*

Plaintiff John Doe was separated from the Navy for homosexuality in 1958, and issued a General Discharge. Complaint, ¶ 32. One week after his enlistment, Doe admitted that he was a homosexual. Defendants' Statement of Undisputed Material Facts ("Defendants' Statement"), ¶ 7.[1] Doe did not mention this fact when he enlisted. *Id.*

In September 1981, Doe applied to the Naval BCMR for recharacterization of his discharge to Honorable. The BCMR applied the discharge characterization standards then in effect and denied Doe's application in July 1982. The BCMR made no finding that Doe's pre-service homosexual conduct affected his performance of military duties. Plaintiffs' Statement, ¶ 15.

Organizational plaintiff National Gay Task Force ("NGTF") is a nonprofit organization created for the purpose of advancing the rights and protecting the interests of individuals who are gay or lesbian. Complaint, ¶ 7. Plaintiffs allege that there are over 10,000 members of NGTF, many of whom are currently serving in the United States Armed Forces. *Id.*

Organizational plaintiff Gay Veterans Association, Inc. ("GVA") is a nonprofit corporation created for the purpose of advancing the rights and protecting the interests of individuals who are gay or lesbian and who have served, or are now serving, in the United States Armed Forces. Complaint, ¶ 2. Many of GVA's members have received discharges for homosexual conduct, homosexuality, homosexual "tendencies," or consented to resign in lieu of court-martial proceedings. *Id.*

## II. *Discussion*

Plaintiffs' first claim is that defendants do not have statutory or constitutional au-

---

1. Plaintiffs indicated that John Doe's service record, and the record of his proceedings before the DRB and BCMR are contained in Plaintiffs' Exhibit 16, which plaintiffs claim to have filed separately, under seal. A search of court records reveals, however, that plaintiffs' exhibit was never filed nor was the Court presented with a motion for leave to file under seal.

thority to characterize administratively the service of personnel discharged from military service. Complaint, ¶¶ 17–20. In the alternative that the Court rejects plaintiffs' first claim, claims 2, 4, and 5 are offered to challenge defendants' regulations that permit a less-than-honorable characterization of service for those discharged for homosexuality, homosexual conduct, or homosexual tendencies without regard to whether the offending activity or status had an adverse impact on performance of military duties or the service in general. Complaint, ¶¶ 21–45, 48–52. In their third claim, the individual plaintiffs challenge the DRB and BCMR decisions in their cases on the ground that the DRB's and BCMR's failed to find any adverse impact on performance of military duties attributable to homosexual behavior. Complaint, ¶¶ 21–47.

## A. *Subject Matter Jurisdiction*

Defendants argue as a threshold matter that plaintiffs lack standing, that this case is not ripe for judicial action, and that plaintiffs have failed to exhaust their administrative remedies. Defendants' jurisdictional argument is nothing less than disingenuous.

The Court resolved these issues in *Bittner v. Secretary of Defense,* 625 F.Supp. 1022 (D.D.C.1985) (*"Bittner"*). Plaintiffs, represented by the same attorneys as in *Bittner,* filed subsequently the present action. The Court observed that the two actions resembled each other in almost every respect. Plaintiffs conceded this point and the Court issued an order dated December 10, 1985, dismissing *Bittner* for reasons of judicial economy. The order stated further that the various issues decided in *Bittner* would have a binding effect on the parties to this action. No objection was raised by defendants.

## B. *Defendants Possess Sufficient Authority to Characterize Administrative Discharges*

Plaintiffs charge that defendants lack clear statutory authority to characterize administratively an individual's military service as less than honorable. Citing *Bland v. Connally,* 293 F.2d 852, 858 (D.C.Cir.1961) (*"Bland"*), plaintiffs frame the issue as a challenge to the military's right "to introduce the element of punishment or 'labeling' into the involuntary separation, by characterizing the discharge derogatorily."

The Court turns first to Chapter 59 of the Armed Forces Statute addressing separation from the service, 10 U.S.C. §§ 1161–1174 (1982). There, one finds section 1169:

> No regular enlisted member of an armed force may be discharged before his term of service expires, except—
>
> > (1) as prescribed by the Secretary concerned;
> >
> > (2) by sentence of a general or special court-martial; or
> >
> > (3) as otherwise provided by law.

10 U.S.C. § 1169. The generous language of 10 U.S.C. § 1169(1), vesting the several military Secretaries with wide authority, is notable. Indeed, the relevant legislative history confirms succinctly the obvious notion that "... 10 U.S.C. 1169 would provide *ample* authority for the issuance of regulations governing *all* types of discharges." S.Rep. No. 931, 90th Cong., 1st Sess. 10, *reprinted in* 1967 U.S.Code Cong. & Adm. News 2635, 2645 (emphasis added).

Contrasting the delegatory language of 10 U.S.C. § 1169(1) with the express language of the Uniform Code of Military Justice authorizing issuance of BCD's or DD's (10 U.S.C. § 858a(a)(1), plaintiffs argue that section 1169(1) is too thin a reed to support administrative discharge regulations. Plaintiffs insist that in order for the regulations at 32 C.F.R. Part 41 to be valid, they would have to be based on clear statutory authority. *See Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (*"Greene"*). While accepting plaintiffs' assertion that separation from the military accompanied by a less-than-honorable discharge characterization hinders civilian employment opportunities, thereby infringing on constitutionally protected liberty and property interests (*e.g., Roelofs v. Secretary of the Air Force,* 628 F.2d 594, 599 (D.D.C.Cir.1980)), the Court finds that

subsequent congressional action combined with the military's special status render any ambiguity in section 1169(1) inconsequential.

In many respects, Congress has actually ratified the military's system of administrative discharges by referring to particular types of discharges or by conditioning veterans' benefits on the receipt of certain types of discharges. *E.g.*, 5 U.S.C. § 2108 (preference in government employment for veterans separated "under honorable conditions"); 10 U.S.C. § 3258 (only Army servicemen who received honorable discharges entitled to automatic retirement); 10 U.S.C. § 771a(b) (provision of clothes and pocket money to servicemen discharged "otherwise than honorably"); 38 U.S.C. § 101(2) (defining "veteran" as one discharged "under conditions other than dishonorable"); 38 U.S.C. § 3103(a) (denying veterans' benefits to service members absent without authority for six months if they were "discharged under conditions other than honorable") 38 U.S.C. §§ 301–4208 (entitlement to many veterans' benefits conditioned on quality of discharge). Clearly, the Congress is aware of the administrative discharge mechanism founded on 10 U.S.C. § 1169(1), as it has qualified entitlement to various benefits upon certain discharge characterizations.

This extensive legislative record also undermines plaintiffs' reliance on *Greene.* In that case, the Supreme Court was faced with a program administered by the Defense Department for issuing industrial security clearances that had an effect on those subject to the program that is analogous to the effects of defendants' discharge characterization program.

The *Greene* Court considered whether congressional sanction of the industrial security clearance program could be inferred from other statutory provisions where the existence of the program was acknowledged and from continuing appropriations to it, although there was no express congressional authorization of the program. The security clearance program was determined to amount to extraordinary governmental interference with Mr. Greene's fifth amendment liberty and property interests principally because the program authorized potentially stigmatizing actions without any due process protections. *Greene*, 360 U.S. at 493, 79 S.Ct. at 1412. The Court concluded that the validity of such a program "cannot be assumed by [congressional] acquiescence or non-action." *Id.* at 507, 79 S.Ct. 1419 (citations omitted).

The Court has little trouble distinguishing *Greene* for two reasons. First, the varied legislation in which Congress has conditioned numerous benefits on the type of an individual's discharge characterization surely represents more than mere congressional "acquiescence or non-action" as regards the administrative discharge program. *See supra*, at 15. Second, unlike the security clearance program in *Greene,* here service members are afforded various statutory and regulatory procedural protections concerning their discharge characterization. *E.g.*, 10 U.S.C. §§ 1552, 1553 (establishing two levels of administrative review of discharges, including a right to a full evidentiary hearing).

On another level, defendants argue that the military practice of grading administrative discharges reinforces military discipline by providing an additional incentive for service members to maintain proper military conduct and discipline at all times. The Supreme Court has consistently recognized the essential requirement of military discipline and the exigent circumstances upon which it is founded. *See, e.g., Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) (recognizing the "need for special regulations in relation to military discipline...."); *Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975); *Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953) ("Military law ... is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment."); *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953) ("The military constitutes a specialized community governed by a separate discipline from that of the civilian."). Accordingly, precedent counsels that the military

be granted wide latitude in fashioning disciplinary mechanisms, such as the administrative discharge regulations here. *See also Rowe v. United States,* 167 Ct.Cl. 468, 472 (1964) (The Secretary of the Air Force could "validly provide by regulation for the administrative issuance of undesirable discharges.").

The Court must reject plaintiffs' first claim as a matter of law. Defendants possess proper statutory and constitutional authority to characterize administrative discharges under regulations at 32 C.F.R. Part 41. *See also Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981) (". . . judicial deference . . . is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.").

### C. *32 C.F.R. Part 41, App. A, Part 2.C.2.-(a)(2) Is a Valid Regulation*

Plaintiffs next challenge broadly the validity of defendants' regulation governing the characterization of military discharges. Complaint, ¶¶ 21–45, 48–52. The relevant regulation provides that the following factors are to govern the characterization of a service member's administrative discharge:

#### a. *General considerations.*

(1) Characterization at separation shall be based upon the quality of the member's service, including the reason for separation.... The quality of service will be determined in accordance with standards of acceptable personal conduct and performance of duty for military personnel. These standards are found in the 10 U.S.C., Section 801–940, UCMJ, directives and regulations issued by the Department of Defense and the Military Departments, and the time-honored customs and traditions of military service.

(2) The quality of service of a member on active duty or active duty for training is affected adversely by conduct that is of a nature to bring discredit on the Military Services or is prejudicial to good order and discipline, regardless of whether the conduct is subject to UCMJ jurisdiction. Characterization may be based on conduct in the civilian community, and the burden is on the respondent to demonstrate that such conduct did not adversely affect the respondent's service. 32 C.F.R. Part 41, App. A, Part 2.C.2.

Plaintiffs contend that this regulation permits a less-than-honorable characterization of service for those discharged for homosexuality, homosexual conduct, or homosexual tendencies without regard to whether the offending activity or status had an adverse impact on performance of duties or the service in general. In attacking the regulation, plaintiffs focus on the second paragraph, and argue that the regulation presumes improperly that conduct that is "prejudicial to good order and discipline" or which "bring[s] discredit on the Military Services" affects adversely "the quality of the member's service."

■ Plaintiffs note correctly that a less than honorable administrative discharge must be based "upon the record of [the member's] military service." *Harmon v. Brucker,* 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958); *accord Roelofs v. Secretary of the Air Force,* 628 F.2d at 598 (*"Roelofs"*). In other words, a less-than-honorable characterization of service may be issued only where the conduct that forms the basis of the derogatory characterization is contained in the service member's military record and reflects accurately "the nature of the service rendered." *Harmon v. Brucker,* 355 U.S. at 582, 78 S.Ct. at 435.

In addressing plaintiffs' challenge to 32 C.F.R. Part 41, App. A, Part 2.C.2.a(2), the Court must determine whether a causal relationship exists between conduct that is "prejudicial to good order and discipline" or which is "of a nature to bring discredit on the Military Services," and the quality of military service itself. *Cf. Roelofs,* 628 F.2d at 596 ("The presumption that an undesirable discharge will result from a civilian conviction is warranted if it results in deficiency in performance of military duties or has a direct impact upon military service.").

■ That the essence of military life is discipline and morale is well recognized. *Parker v. Levy*, 417 U.S. at 743–52, 94 S.Ct. at 2555–60. A soldier who engages in conduct that disrupts good order and discipline or reduces the morale of other soldiers has failed significantly in one of his or her more important tasks as a member of the Armed Forces. *Id.* Indeed, military service entails much more than the rote performance of daily tasks; it involves a duty to maintain standards of conduct in all aspects of military life. *See, e.g., id.* at 743, 749–51, 94 S.Ct. 2558–59.

The courts historically have been reluctant to interject themselves into the internal affairs of the Armed Forces. *E.g., Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *see also Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 19 (1973) (Courts must defer to military judgments because "it is difficult to conceive of an area of governmental activity in which the courts have less competence."). Consequently, the Court is hard-pressed to adjudge the precise parameters of the challenged regulation, let alone discern any illegality on its face. *See also* 32 C.F.R. Part 41, App. A, Part 1.H.1.a. (The military has determined that homosexuality is incompatible with service in the Armed Forces.) (Plaintiffs do not here challenge this regulation.).

Plaintiffs are indeed correct when they note that the case law prohibits the military from discharging a member under other than honorable conditions unless there is a showing that the conduct on which the discharge was based impaired the service member's performance of military duties or otherwise affected adversely the service. *E.g., Harmon v. Brucker*, 355 U.S. at 583, 78 S.Ct. at 435; *see also Kennedy v. Secretary of the Navy*, 401 F.2d 990, 991–92 (D.C.Cir.1968) ("*Kennedy*"); *Roelofs*, 628 F.2d at 597 ("But the military may reasonably and properly look beyond the performance by a particular serviceman of his daily chores, and it may take into account the impact of 'outside' actions in diminishing the overall effectiveness of the military."). Nonetheless, the Court fails to perceive any conflict between the established principles of discharge characterization and the guidelines set forth at 32 C.F.R. Part 41, App. A, Part 2.C.2.

Accordingly, the Court rejects plaintiffs' fourth and fifth claims as a matter of law. The Court also rejects plaintiffs' second claim for the same reasons as stated above. The second claim challenged apparently earlier versions of the discharge characterization regulations. Complaint ¶¶ 22–23. The Court will review the application of these regulations to the individual plaintiffs in the context of plaintiffs' third claim. *Infra.*

### D. *The DRB and BCMR Decisions in the Individual Plaintiffs' Cases Were Valid, Except As to Plaintiff Doe*

Plaintiffs contend in their third cause of action that the DRB's and BCMR's ("Boards") refused improperly to upgrade the discharge characterizations of plaintiffs Black, Clark, Vincenz, and Doe because (1) the Boards failed to apply current discharge standards, and (2) the Boards failed to apply the current case law requiring a finding of a direct impact on performance on military duties. Each individual plaintiff was discharged from the Armed Forces about 30 years ago for homosexuality, and received a less than honorable administrative discharge. The DRB's and BCMR's determined in each case that a full upgrade to Honorable was not warranted. Complaint, ¶¶ 24–33.

■ DRB's and BCMR's are required to apply current discharge regulations when reviewing an application for a discharge upgrade if current regulations are substantially more favorable to the service member. 32 C.F.R. § 70.9(c). The Boards are also required to examine the overall service record of an applicant for an upgrade, and to deny the application or grant it in whole or in part on the basis of the whole record before it, including the reason for discharge. 32 C.F.R. § 70.8(c)(6)(ii). Additionally, these current review standards require that a less than honorable discharge may be issued or maintained only when the

**18**

conduct upon which the derogatory conduct is based affects the quality of service rendered. *See supra,* at 16.

The Boards' decisions in each case, except plaintiff Doe, indicated clearly that they reviewed plaintiffs' applications under the more lenient, currently prevailing standards. *See* Plaintiffs' Exhibit 13, Record of Proceedings at 3; 14; 15 at 60A; and Plaintiffs' Statement, ¶ 15. Indeed, in Ms. Black's case the DRB "agree[d] with the contention that being a homosexual is no longer reason enough to warrant an Undesirable Discharge." Plaintiffs' Exhibit 14.

Nonetheless, the record discloses that the Boards did not limit their review of the individual plaintiffs' stated reason for discharge, but examined the members' entire military records pursuant to 32 C.F.R. § 70.8(c)(6)(ii). The proceedings before the Boards revealed, for example, that Ms. Black had three prior summary court-martial convictions and performed poorly in technical school. Plaintiffs' Exhibit 14, Air Force DRB Decisional Rationale, Findings. Similarly, Mr. Clark had a prior summary court-martial conviction for driving while intoxicated, as well as low efficiency ratings. Plaintiffs' Exhibit 13, Record of Proceedings at 3. *Cf.* 32 C.F.R. Part 41, App. A, Part 2.C.2.b(2) and (3) (standards for issuing General and Less Than Honorable Discharges).

Ms. Vincenz had sex with another woman on post under circumstances where her roommate could have been expected to and, in fact, did observe the episode. Plaintiffs' Exhibit 15, Statement of Private Patricia J. Clancy; Statement of Lilli Vincenz. Sex in the barracks is one of the aggravated homosexual acts specifically singled out under current regulations as justifying a less than honorable discharge. 32 C.F.R. Part 41, App. A, Part 1.H.2.d and g; *see also* Part 2.C.2.a(2).

 As regards plaintiff Doe, the record indicates that he failed to mention his homosexuality when he applied for military service. Defendants' Statement, ¶¶ 7–8. Thus, defendants assert that plaintiff Doe attained fraudulent entry into the service. *Cf.* 10 U.S.C. § 883 (criminal penalties for

fraudulent enlistment); 32 C.F.R. Part 41, App. A, Part 1.E.4 (administrative provisions governing fraudulent entry). There is no indication, however, that plaintiff Doe was asked about his homosexuality at the time of his enlistment. Accordingly, plaintiff Doe's case is remanded to the BCMR to determine whether such a question was put to Doe when he sought entry to the service. If it is the case that plaintiff Doe was not obligated to reveal his homosexuality upon enlistment, it appears to the Court that Doe's less than honorable discharge was likely based solely upon the fact that he was a homosexual. In that eventuality, plaintiff would be entitled to a full upgrade to Honorable. *Cf.* 32 C.F.R. Part 41, App. A, Part 1.H.2; *Beller v. Middendorf,* 632 F.2d 788, 806–07 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (suggesting discharge for simple fact of homosexuality should not merit less than honorable characterization).

Plaintiff Doe's case aside, the Court is restricted in its ability to review the rationale of the Boards' decisions. The Supreme Court has recognized that the broad powers courts possess to regulate civilian life are to a large extent inapplicable to the military. *Chappell v. Wallace,* 462 U.S. 296, 300–03, 103 S.Ct. 2362, 2365–67, 76 L.Ed.2d 586 (1983) (and citations therein noted). The Court has determined that the relevant regulations are valid and that the Boards applied current standards of review. The record of each proceeding above revealed that the particular plaintiff's military service record included conduct independent of the plaintiff's homosexuality that could sustain a less than honorable discharge. Given these circumstances, the Court may not disturb the Boards' decisions.

Nor does plaintiffs' reliance on *Bland, Kennedy, Roelofs, Wood v. Secretary of Defense,* 496 F.Supp. 192 (D.D.C.1980) (*"Wood"*), or *Doe v. Secretary of the Air Force,* 563 F.Supp. 4 (D.D.C.1982), *aff'd,* 701 F.2d 221 (D.C.Cir.1983) (*"Doe"*) alter the outcome. Plaintiffs cite these cases primarily for the proposition that the military departments may not characterize a

member's service as less than honorable without first establishing a direct nexus between the conduct authorizing premature separation and the actual performance of military duties.

*Bland* and *Kennedy* both involved servicemen who received less than honorable discharges as a penalty for engaging in constitutionally protected activities. *See Bland*, 293 F.2d at 855; *Kennedy*, 401 F.2d at 991 (First Amendment rights of free political association). Here, the right to engage in homosexual conduct does not benefit from similar constitutional protection. *See Bowers v. Hardwick,* — U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Further, the plaintiffs in *Bland* and *Kennedy* were not on active duty at the times that they pursued their allegedly incriminating interests. Here, each plaintiff was discharged from active duty. Last, in contrast with *supra*, at 18, the *Bland* and *Kennedy* plaintiffs' military records contained no other indications of deficient service that could conceivably support a Less Than Honorable Discharge.

*Roelofs*, 628 F.2d 594, says principally that a discharge for civilian misconduct cannot be characterized as less than honorable absent a showing that the misconduct in some fashion affects adversely the military. Nothing in *Roelofs* is at odds with the circumstances in this case. In each plaintiff's case, the Boards issued written explanations connecting the various incidents of misconduct and the discharge characterization. The *Roelofs* court also upheld the validity of an Air Force regulation that provided for separation from the service and a less than honorable discharge for members convicted by civilian authorities for various types of criminal offenses. *Roelofs*, 628 F.2d at 598.

Likewise, *Wood*, 496 F.Supp. 192, offers plaintiffs little support here. That action challenged the authority of the military to issue less than honorable administrative discharges to members of the inactive reserve based on civilian misconduct not found to have affected adversely the quality of their service. In contrast, the Boards' decisions not to upgrade fully plaintiffs' discharge characterizations were based upon a variety of misconduct reflected in plaintiffs' active duty records.

Last, in *Doe*, 563 F.Supp. 4, it was found, *inter alia*, that the Air Force abused its discretion in issuing a Less Than Honorable Discharge to an Air Force major where there was no showing that the underlying misconduct was service related. Plaintiff in *Doe* was found to have engaged in homosexual conduct during his off-duty hours with the 15-year-old son of another Air Force officer. Again, this case differs in that the Boards based their written decisions on plaintiffs' military service records, not "extraneous," or nonmilitary misconduct. *But cf. Solorio v. United States,* — U.S. ——, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) ("service connection" test for court-martial jurisdiction abandoned in favor of military status determination).

### E. Defendants Are Entitled to Summary Judgment On Plaintiffs' Sixth and Seventh Claims

In their sixth claim, plaintiffs challenge the DRB's and BCMR's alleged failure to apply their own regulations in their treatment of discharge recharacterization applications dealing with homosexuality. 32 C.F.R. Part 70. These regulations require DRB's and BCMR's to upgrade a less than honorable discharge issued for homosexuality if there is substantial doubt that the character of the discharge would have remained the same under the present more favorable standards for grading homosexuality discharges.

The regulations further require, *inter alia*, the Boards to determine whether the applicant's record of military service, excluding consideration of homosexuality, warrants an Honorable Discharge. 32 C.F.R. § 70.9. Here the Boards based their decisions on specific violations of military regulations, contained in the plaintiffs' service records. There is no indication that the DRB's and BCMR's refused to upgrade any discharge due purely to any plaintiff's general homosexual preference. It appearing that the Boards abided by their regula-

**20**

tions, the Court dismisses plaintiffs' sixth claim.

Plaintiffs seventh claim challenges defendants DRB's and BCMR's alleged practice of substituting *post hoc* alternative bases for maintaining a less than honorable discharge. This claim is based upon the allegations of Harry Lorenz, who was dismissed from this action earlier. *See Bittner*, 625 F.Supp. at 1029. Accordingly, plaintiffs' seventh claim must be dismissed as it lacks any foundation.

### III. *Conclusion*

Plaintiffs cast this action as a challenge to defendants' alleged practice of using "the less than fully honorable characterization of service in an administrative proceeding to impose punishment on service members whose *only* offense is homosexuality...." Plaintiffs' Motion for Partial Summary Judgment at 9–10 (emphasis added). The facts of this case, however, do not form a sufficient platform from which to launch such a challenge. The individual plaintiffs, other than Doe, each suffered service records that reflected other "offenses" than only homosexuality, and, hence, provided alternative grounds for denying an honorable discharge characterization.

The law here counsels great deference toward military exigency and that military judgment be afforded a wide latitude. While the military is constrained to base any discharge characterization on the member's performance of his or her duties, the Court concludes that defendants are operating here within constitutional bounds. An order granting summary judgment in defendants' favor, except as to plaintiff Doe, is attached.

### ORDER

Upon consideration of plaintiffs' motion for partial summary judgment, defendants' motion for summary judgment; the oppositions and reply; the exhibits; the entire record herein; and for the reasons set forth in the accompanying opinion, it is by the Court this 29th day of July 1987,

ORDERED that defendants' motion for summary judgment is granted, except as to plaintiff Doe's third claim; it is further

ORDERED that plaintiffs' motion for partial summary judgment is denied, except as to plaintiff Doe's third claim; it is further

ORDERED that plaintiff Doe's case is remanded to the appropriate Board for Correction of Military Records for proceedings consistent with the attached opinion; and it is further

ORDERED that this case is dismissed with prejudice, except as to plaintiff Doe's third claim.